IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CLEAR LINK TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>ASPIRATION FUND ADVISER LLC, and ASPIRATION PARTNERS, INC.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>Case No. 2:23-cv-00419-TS<br><br>District Judge Ted Stewart |

Before the Court is Plaintiff's Motion for Entry of Default Judgment.[1] The Court took the motion under advisement following oral argument on January 29, 2024.[2] For the reasons discussed below, the Court GRANTS the motion.

I. BACKGROUND

Plaintiff filed its complaint on June 28, 2023, seeking damages for breach of contract and breach of the covenant of good faith and fair dealing.[3] Plaintiff amended the complaint on August 15, 2023, adding Defendant Aspiration Partners, Inc. and claims for unjust enrichment.[4] Defendants were served on September 25, 2023, making their answer due on October 16, 2023.[5] After Defendants failed to plead or otherwise defend against the amended complaint, Plaintiff

---

[1] Docket No. 15, filed November 28, 2023.

[2] Docket No. 26, filed January 29, 2024.

[3] Docket No. 1.

[4] Docket No. 6.

[5] Docket Nos. 11, 12.

filed a motion for entry of default certificate on October 25, 2023.[6] The clerk entered the default certificate on November 13, 2023.[7]

Plaintiff filed the instant motion for default judgment on November 28, 2023.[8] Defendants filed an untimely answer on December 6, 2023, nearly two months after the deadline.[9] Defendants filed their response to the instant motion on December 13, 2023, arguing that default judgment is inappropriate because Defendants were not aware of the litigation until several weeks after service of process was executed.[10] Plaintiff filed its reply brief on January 10, 2024, which includes several pages of correspondence between Plaintiff's counsel and Defendants' counsel that were exchanged both before and after service.[11]

## II.  DISCUSSION

The Court construes Defendants' answer and response to the motion for default judgment as a motion to set aside the entry of default. Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause." "[I]t is well established that the good cause required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)."[12]

---

[6] Docket No. 13.

[7] Docket No. 14.

[8] Docket No. 15.

[9] Docket No. 19.

[10] Docket No. 21, at 2, 4.

[11] Docket No. 24.

[12] *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997).

"The Court applies the same considerations when deciding whether to set aside either an entry of default or a default judgment, but they are applied more liberally when reviewing an entry of default."[13] Courts generally consider three factors for setting aside a default judgment under Rule 60(b): "(1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the judgment."[14] "Although these are the principal factors the court considers, they are not necessarily determinative, and the court may consider other factors, if necessary."[15] The court also need not consider all three factors.[16] "For example, if the default was the result of the defendant's culpable conduct, the court may refuse to set aside the entry of default on that basis alone."[17]

"[A]ny doubts about the entry of default should be resolved in favor of setting it aside, so that the case may be decided on its merits,"[18] because "[d]efault judgments are not favored by courts."[19] "However, this judicial preference is counterbalanced by considerations of social goals, justice and expediency, a weighing process which lies largely within the domain of the trial judge's discretion."[20] "[A] workable system of justice requires that litigants not be free to

---

[13] *Olivas v. Bentwood Place Apartments, LLC*, No. 09-4035-JAR, 2010 WL 2952393, at *2 (D. Kan. July 26, 2010) (quoting *Clelland v. Glines*, No. 02-2223-KHV, 2003 WL 21105084, at *3 (D. Kan. Apr. 11, 2003)).

[14] *United States v. Timbers Pres., Routt Cnty., Colo.*, 999 F.2d 452, 454 (10th Cir. 1993).

[15] *Jones v. LabOne, Inc.,* No. 2:06-CV-00735-TC-PMW, 2007 WL 9782956, at *1 (D. Utah Jan. 31, 2007); *see also Guttman v. Silverberg,* 167 F. App'x 1, 4 (10th Cir. 2005) ("A court need not consider all of the factors and may consider other factors as well.").

[16] *Jones*, 2007 WL 9782956, at *1.

[17] *Id.*

[18] *Id.* (citing *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 795 (6th Cir. 2002)).

[19] *Katzson Bros., Inc. v. EPA*, 839 F.2d 1396, 1399 (10th Cir. 1988).

[20] *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) (internal citation omitted).

3

appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure."[21]

A. CULPABILITLY

"When a party has actual or constructive notice of a lawsuit, yet completely fails to answer or otherwise communicate with the Court, defendant's failure is willful and 'demonstrates complete disregard for the authority of the Court.'"[22] "If the default was the result of the defendant's culpable conduct, the district court may refuse to set aside the default on that basis alone."[23] "Generally a party's conduct will be considered culpable only if the party defaulted willfully or has no excuse for the default."[24]

Here, Defendants are culpable and willfully defaulted. Despite Defendants' assertions that they were not aware of the litigation until several weeks after official service, there is ample evidence to the contrary. First, Defendants' counsel advised Plaintiff that he was authorized to waive service on July 6, 2023.[25] That is, Defendants were aware of the lawsuit five months before the answer was filed. Second, on at least two occasions in July 2023, Defendants' counsel asserted to Plaintiff that the wrong defendant was named as a party.[26] Plaintiff continued to send updates to Defendants' counsel for months despite receiving no responses from Defendants'

---

[21] *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983).

[22] *Olivas,* 2010 WL 2952393, at *2 (quoting *Crutcher v. Coleman*, 205 F.R.D. 581, 584 (D. Kan. 2001)).

[23] *Hunt v. Ford Motor Co.*, No. 94-3054, 1995 WL 523646, at *3 (10th Cir. Aug. 29, 1995) (unpublished) (citation omitted).

[24] *Timbers Pres.*, 999 F.2d at 454 (citation omitted); *see also Hunt*, 1995 WL 523646, at *3–4 (concluding that receiving actual notice and failing to respond is culpable conduct).

[25] Docket No. 24-1, at 2.

[26] Docket No. 24-3, at 2–3; Docket No. 24-4, at 2–5.

counsel.[27] Third, Defendants' counsel reached out to Plaintiff to discuss the case on October 30, 2023.[28] Finally, Defendants indicated on November 28, 2023, that they had hired local counsel and were still interested in settlement negotiations.[29] Defendants clearly knew of the lawsuit and were somewhat involved in the litigation for months leading up to the entry of default.

Defendants repeatedly argue that "[o]n or about September 21, 2023, there was no one located at [Defendants' California] office to become aware of or accept service of Plaintiff's First Amended Complaint."[30] There are two problems with this argument. First, the Amended Complaint was served on September 25th, not the 21st. Second, it was served on Defendants' registered agent—Corporation Services Company—in Delaware.[31]

Under Utah law, "a registered agent is an agent of the represented entity authorized to receive service of any process, notice, or demand required or permitted by law to be served on the entity."[32] General agency law principles indicate that a corporation can be held accountable for an agent's actions and knowledge as if they were its own.[33] More specifically, service of a summons and complaint on an agent is effective if the agent is authorized by appointment or by law to receive service of process and bind his principal.[34] Notice to the authorized, registered

---

[27] Docket Nos. 24-5, 24-6.

[28] Docket No. 24-7.

[29] Docket No. 24-8, at 2.

[30] Docket No. 21-1, at 2.

[31] Docket Nos. 11, 12.

[32] Utah Code § 16-17-301(1).

[33] *Denny v. Ill. Nat'l Ins. Co.*, No. 10-cv-0676-CVE-TLW, 2010 WL 5141656, *3 (N.D. Okla. Dec. 13, 2010).

[34] *Sumarlin v. Asset Recovery Tr.*, No. 2:08-cv-579-CW, 2008 WL 4922436, at *1 (D. Utah Nov. 14, 2008) (citing Fed. R. Civ. P. 4(h)(1)(B)).

agent is not constructive notice; it is actual notice.[35] "Because corporations are nothing but bundles of agency relations, there is no other person to whom the 'real' notice comes after an agent gets notice."[36]

Here, Defendants do not dispute that Corporation Services Company was acting as their authorized, registered agent at the time of service. Corporation Services Company was authorized by law to accept service, and its knowledge of the lawsuit is imputed to Defendants. Whether there were people in Defendants' California office to receive actual notice of service is not relevant and distracts from the primary issues.

Even considering the facts as outlined by Defendants, Defendants are still culpable. At the very latest, Defendants had notice of the lawsuit on September 25, 2023, when their registered agent, Corporation Service Company, received service on their behalf.[37] Defendants claim that they did not receive actual notice for several weeks after service, but there is still no excuse for waiting until December to retain local counsel or file something with the Court. Defendants do not explain what efforts, if any, they made to obtain local counsel or file an answer during the nearly two-month period between the time they claimed to know of the lawsuit and December 6, 2023. Thus, this factor weighs against setting aside the entry of default and in favor of granting the Motion for Default Judgment.

---

[35] *Peterson v. Sealed Air Corp.*, 902 F.2d 1232, 1237 (7th Cir. 1990); *see e.g., Emps. Ins. of Wausau v. Banco De Seguros Del Estado*, 199 F.3d 937, 944 (7th Cir. 1999) (finding that designation of registered agents for service of process created an agency relationship from which actual notice, rather than constructive notice, must be inferred); *Williams v. Meeker N. Dawson Nursing, LLC*, 2019 OK 80, ¶ 20, 455 P.3d 908, 915 (finding that corporations may not avoid litigation by claiming lack of actual notice when their registered agents have been properly served).

[36] *Peterson*, 902 F.2d at 1237.

[37] Docket Nos. 11, 12.

B.  MERITORIOUS DEFENSE

"Defendant does not need to demonstrate a likelihood of success on the merits, but rather, defendant's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense."[38] "For purposes of this part of the motion, the movant's version of the facts and circumstances supporting his defense will be deemed to be true."[39]

Here, Defendants fail to make any argument that they have a meritorious defense to the claims against them. Instead, Defendants stand on the bare assertion that they did not know about the lawsuit—an assertion that is clearly untrue. Moreover, at oral argument, counsel conceded that some amount was owed to Plaintiff. The only disputes are how much and who should pay. This factor weighs against setting aside the entry of default and in favor of granting the Motion for Default Judgment.

C.  PREJUDICE TO NON-MOVING PARTY

"There is no prejudice to the plaintiff where 'the setting aside of the default has done no harm to plaintiff except to require it to prove its case.'"[40] "Thus, mere delay does not alone constitute prejudice."[41] "To establish prejudice, the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion."[42]

---

[38] *Fink v. Swisshelm*, 185 F.R.D. 353, 355 (D. Kan. 1999) (citation omitted).

[39] *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978).

[40] *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000) (quoting *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960)).

[41] *Id.*

[42] *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990) (citation omitted).

In its reply brief, Plaintiff argues it is prejudiced because of the time and expense it has incurred in seeking default judgment. Plaintiff made several efforts to notify Defendants about the status of the litigation to encourage Defendants' participation. Plaintiff sent dozens of emails to counsel before, during, and after seeking default to avoid this exact situation—Defendants challenging the legitimacy of the entry of default and default judgment well after the deadlines have passed. Defendants' argument that they were unaware of the lawsuit is particularly egregious in this case because Defendants engaged in pre-litigation conversations and settlement discussions with opposing counsel. Such conduct cannot be tolerated. Contrary to Defendants' argument at the hearing, this default is not a mere technicality, but rather the consequence of a conscious choice to not participate in the litigation. Nearly three months have passed since Plaintiff filed for an entry of default in October 2023. In that time frame, Defendants were well aware of the status of the litigation and simply chose not to participate until December 2023. This lengthy delay and increase in litigation costs, when combined with Defendants' deceptive behavior, constitutes prejudice to Plaintiff. Thus, this factor weighs against setting aside the entry of default and in favor of default judgment.

III.  CONCLUSION

Based on the above, the Court GRANTS the Motion for Default Judgment (Docket No. 15). The judgment will be entered by separate order.

SO ORDERED this 31st day of January, 2024.

BY THE COURT:

_____
TED STEWART
United States District Judge